[No. 3140.  Decided February 23, 1899.]

MAURICE K. SMITH, *Respondent,* v. NORTH AMERICAN TRANSPORTATION AND TRADING COMPANY, *Appellant.*

CARRIERS—ABANDONMENT OF VOYAGE—DUTY TO PASSENGER—LOW WATER—ACT OF GOD—INSTRUCTIONS—EVIDENCE.

Where a transportation company agrees to take a passenger by steamer to a point within the interior of Alaska upon the Yukon river, but is compelled to abandon the trip until the next season, by reason of the low stage of water in the river, the company cannot put the passenger off at any intermediate point, but it is its duty to return him free of charge to the point of embarkation.

Where it appears from the evidence that defendant, after agreeing to transport plaintiff from Seattle to Dawson City in Alaska, and after carrying him to a point on the Yukon river,

abandoned the trip for the season, a requested charge that if the jury "shall find that defendant carried plaintiff to Fort Yukon without any unreasonable delay, and at that place encountered a stage of water so low as to make a continuance of navigation towards Dawson impossible, that this constitutes the act of God, and that the company was excused from carrying him further towards Dawson until the stage of water should be sufficient," was properly refused as inapplicable to the case, since it contained no qualification as to the duty of the defendant to inform itself concerning the stages of water on the route and the probability of its being able to carry out its contract.

The fact that plaintiff's witnesses have testified to a conversation to which plaintiff was in no wise a party does not warrant the defendant in putting in evidence further details of the conversation, to the effect that other parties had released defendant from liability for the performance of a contract to carry.

Appeal from Superior Court, King County.—Hon. ORANGE JACOBS, Judge.  Affirmed.

*Bausman, Kelleher & Emory,* for appellant:

Low water is the act of God.  *Bennett v. Byram,* 38 Miss. 17 (75 Am. Dec. 90); *Silver v. Hale,* 2 Mo. App. 557; *Boner v. Merchant's Steamboat Co.,* 1 Jones' Law, 271.  The situation is exactly parallel to that of the freezing of waters in the northern rivers.  The freezing of canals has always been held, in cases widely quoted, the act of God.  *Beckwith v. Frisbie,* 32 Vt. 559; *Parsons v. Hardy,* 14 Wend. 215 (28 Am. Dec. 521); *Bowman v. Teall,* 23 Wend. 306 (35 Am. Dec. 562); *Empire Transportation Co. v. Wallace,* 68 Pa. St. 302 (8 Am. Rep. 178); *West v. The Steamboat Berlin,* 3 Iowa, 532.  So of a snowstorm.  *Ballentine v. North Missouri R. R. Co.,* 40 Mo. 491 (93 Am. Dec. 315).

*Byers & Byers,* for respondent:

It is the rule of law that the act of God is not an excuse for a failure to perform a contract, when the performance

of the contract is possible, or when the impossibility is one of the contingencies which a prudent man should have foreseen and provided for.  2 Parsons, Contracts (7th ed.), *p. 672; *Harmony v. Bingham,* 12 N. Y. 99 (62 Am. Dec. 142); *Mississippi River Logging Co. v. Robson,* 69 Fed. 773; *Central Trust Co. v. Wabash, etc., Ry. Co.,* 31 Fed. 440; *Ryan v. Rogers,* 31 Pac. 244; *Williams v. Vanderbilt,* 28 N. Y. 217 (84 Am. Dec. 333).  A contract for passage is an entire contract for the voyage, and, if the voyage is broken up and the passenger is not able to reach his destination, he is entitled to recover his passage money, at least.  Fetter, Carriers of Passengers, § 274; *Brown v. Harris,* 2 Gray, 359.

The opinion of the court was delivered by

DUNBAR, J.—The respondent sued the appellant, the North American Transportation & Trading Company, alleging an agreement by the defendant to take him from Seattle to Dawson by September 15, 1897, by way of St. Michael and the Yukon river.  When the steamer Cleveland, on which he took passage, arrived at Ft. Yukon, it proceeded no further.  It was claimed by defendant's officers that it could not proceed further by reason of low water, and the respondent was returned by the company to St. Michael, from whence, at his own expense, he returned to Seattle, the respondent paying to appellant for passage money from Seattle to Dawson City the sum of $200.  The suit is to recover the passage money, the expense he was put to in returning to Seattle, and damages for loss of time.  The jury returned a verdict in the sum of $380.50 in favor of plaintiff.  He was awarded $200, the passage money; $52.50, expense of return to Seattle; $8, board paid by respondent at St. Michael; and $120, for loss of time.  Judgment was entered on this verdict, and an appeal was taken here.

It is alleged that the court erred in charging the jury that it was the duty of the company, if it could not take the respondent through, to bring him back to Seattle without charge. We think that, under the circumstances, this instruction correctly stated the law. This is not a parallel case with those in which passengers are delayed on railroads where cars are running on frequent and regular time, and delays are presumed to be and are purely temporary. There is no contention by the appellant in this case that the delay here would have been a temporary one, or that there was any probability that the passengers could have been forwarded before the next summer. There is no case that holds—and we would not follow it if there were—that passengers could be discharged from a steamer on which they had taken passage, and forced to remain over winter in an Alaskan climate, to await the convenience of a transportation company for their removal the next summer.

The second assignment of error embraces the same proposition, viz., the court directed the jury that the company had no right to compel or require the passengers to get off and stop at Ft. Yukon or Munook, if they were not willing to do so.

The third assignment is that the court erred in refusing to give the following instruction asked by the defendant:

" I instruct you, gentlemen, that if you shall find that the defendant company carried plaintiff to Ft. Yukon without any unreasonable delay, and at that place encountered a stage of water so low as to make a continuance of navigation towards Dawson impossible, that this constitutes the act of God, and that the company was excused from carrying him further towards Dawson until the stage of water should be sufficient."

Conceding, without deciding, that low water, under the circumstances mentioned in the instruction, is an act of God, this instruction does not contain the qualifications

necessary to constitute it the law as applicable to this case. There is eliminated from the instruction the question of the duty of the transportation company to legitimately inform itself concerning the stages of water on the route. The passenger, when he buys transportation of a company, must necessarily rely upon the company's information concerning the practicability and feasibility of the trip contracted for. It is for the company to put on foot inquiries concerning the feasibility of the trip or probability of its being able to carry out its contract. For aught that appears in this instruction, it might have been known to the company that these passengers could not have been transported any further than the Yukon river; and yet, under the theory of the instruction, it would be justified in taking from travelers the full fare to Dawson, and leaving its passengers stranded on the route. This qualification was understood by the appellant, and acted upon in its answer to the complaint; for subdivision 3 of the answer is to the effect that the Yukon river was at that time so low as to be impossible of navigation between Ft. Yukon and Dawson City by the John J. Healy or any other craft plying in those waters propelled by steam, and engaged in the carriage of freight and passengers for hire; that this stage of the water between those places was utterly unforeseen by appellant, and could not have been foreseen, and was wholly unexampled. This qualification should have been incorporated in the instruction. But these instructions, together with the others, the refusal to give which is assigned as error here, are all rendered inapplicable by the undisputed testimony in the case. The court instructed the jury as follows:

"Now, the defense here, really and strictly speaking, is that the defendant was prevented from taking the plaintiff from Ft. Yukon to Dawson City by circumstances over which it had no control; in other words, it

bases it upon the ground of an act of God. Now, I am not going to read to you the more accurate statement that I gave to you in another case of what constitutes the act of God. In order to excuse non-performance of a contract on the ground of an act of God, there must be no mixture in that, first, of want of diligence; there must be no admixture of negligence; there must be no admixture of want of judgment or skill. In an act of God no amount of judgment or skill or wisdom can prevent the damage or injury. That is what distinguishes it from other things that have connected with them the agency of man."

This instruction, while brief, we think, was explicit and correct; and the other instructions asked, as we have said before, are not applicable, for the reason that this was the only real contest in the case, viz. whether the expedition failed by reason of the act of God. There is no pretext that there was any opportunity for this passenger to have reached Dawson by any other boat during the season of 1897. There was virtually an abandonment of the trip by the company. This is shown by the testimony of the captain of the boat, Capt. Barr. His testimony is to the effect that the water was so low in the Yukon river that the boat could not proceed, and that there was no probability or expectation of any boat getting up the river that fall. In fact, it is conceded that the passengers understood that they had to disembark either at Munook, Tanana, Ft. Yukon, or Rampart City. Indeed, the captain stated that he posted a bulletin up showing the passengers how many pounds of provisions they could buy to sustain them during the winter; that they could get them there or at Rampart City; and he stated that, if they got off at either of those places, he would give them each their proportion of the load of the boat that consisted of provisions, divide the cargo up, and allow each passenger to take a ticket or an order for transportation on the boat the next trip it would make. And, showing conclusively that the next trip which

was contemplated was the next season, and that it was not expected by the company that that or any other boat belonging to the company could go up the river later in that season, he stated that ice had already begun to form in the river. He testified on page 64 of the record as follows: "Why, they asked to see Mr. Weare, and Mr. Weare had a talk with them in the cabin of the boat. Took occasion to reprimand me for giving them tickets for next season."

So that it plainly appears that the trip was abandoned at least for that year; and, that being the case, the instructions asked for by the appellant, even if otherwise constituting the law, were not in point, under the undisputed testimony in the case.

The last error assigned is for the sustaining of an objection to a question propounded to witness Barr, in which he stated that they had agreed to release the boat from all responsibility in case they were taken back to St. Michael. This statement was alleged to have been made to a Mr. Weare, and it was objected to on the ground that it was not responsive to the question asked. It is contended that this conversation should have been admitted by this witness, for the reason that it was testified to by the complainant's witnesses Overstreet and Lambert; but we think the testimony was properly ruled out by the trial court, for the reason that this conversation was not the conversation which had been testified to by the witnesses for the respondent. At least, it was not identified as such, and it was not shown that the respondent here had anything to do with or was in any way concerned in the propositions that were discussed in that conversation. We think there were no prejudicial errors committed by the court in the trial of this cause, and the judgment will be affirmed.

GORDON, C. J., and FULLERTON, ANDERS, and REAVIS, JJ., concur.